No. 55,284

TRI-COUNTY PUBLIC AIRPORT AUTHORITY, A Public Corporation, *Plaintiff/Appellee,* v. MORRIS COUNTY BOARD OF COUNTY COMMISSIONERS, and MORRIS COUNTY TREASURER, *Defendants/Appellants.*

(666 P.2d 698)

Opinion filed July 15, 1983.

*David H. Heilman,* of Council Grove, argued the cause and was on the brief for the appellants.

*Robert C. Johnson,* of Herington, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action in mandamus brought by the Tri-County Public Airport Authority against the Board of County Commissioners of Morris County to determine the tax-exempt status of certain real property owned by the plaintiff and for recovery of real estate taxes paid on the land for the years 1977 through 1980.

The facts are not in dispute and essentially are as follows: The city of Herington acquired 1,720.5 acres of real estate on September 24, 1948, by a deed from the United States government. The United States previously had used the land during World War II as the "Delevan Army Air Base." On December 4, 1979, the city of Herington conveyed the land to the Tri-County Public Airport Authority (Tri-County). The taxes for 1977-78 were paid by the city but not under protest. The 1980 property taxes were not due and had not been paid at the time of the filing of the action on July 18, 1980. Tri-County was created by the city of Herington to operate an airport and came into existence on July

6, 1978. Only a portion of the 1,720.5 acres of land was actually used for a runway for the airport. Portions of the land were rented to private citizens under contract, providing for rental payments for use of portions of the land for a feed lot, private aviation activities, and other business purposes. The State Board of Tax Appeals, by an order dated February 16, 1971, had previously ordered and determined that the property was subject to taxation and was not exempt.

In its answer to Tri-County's petition, the defendant County filed an answer challenging the jurisdiction of the district court to consider the action. The trial court ruled that it had jurisdiction and proceeded to determine the question whether the airport property rented to others was exempt from ad valorem taxation. The district court held that the land was exempt from taxation under the provisions of K.S.A. 1980 Supp. 79-201a. The defendant County appealed to this court.

At the outset, we are faced with the question of jurisdiction originally raised in the trial court. The district court made no specific finding as to the basis for its jurisdiction, simply holding that it had authority to decide the case. The jurisdictional issue presented must be considered and determined in the light of the Kansas statutes as they existed on July 18, 1980, when the action was filed in the district court. It is important to note that, after the ruling of the Board of Tax Appeals on February 16, 1971, holding that the property was not exempt, the city of Herington, which owned the property at that time, did not attempt to appeal the ruling and paid ad valorem taxes through 1979. Tri-County made no effort to obtain an up-to-date ruling from the Board of Tax Appeals (BOTA) on the tax-exempt status of the land in 1980. It simply filed a mandamus action against the County without attempting to exhaust its administrative remedies. The basic issue presented is whether the district court lacked jurisdiction of the mandamus action because of the failure of Tri-County to avail itself of the administrative remedies provided by the Kansas statutes.

Throughout our judicial history, mandamus has been utilized by taxpayers as a remedy in tax cases where other legal remedies provided at the time were deemed not to be an adequate remedy. In *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957 (1925), mandamus was held to be a remedy available to an aggrieved tax-

payer where a board of county commissioners had refused to comply with an order of the tax commission to refund taxes. In *Kittredge v. Boyd,* 136 Kan. 691, 18 P.2d 563 (1933), mandamus was held to be a proper remedy to require the state treasurer to repay money paid under protest. It was pointed out in the opinion that the plaintiff had no other plain and adequate remedy at law. *State, ex rel., v. Williams,* 139 Kan. 599, 32 P.2d 481 (1934), involved a dispute between a railroad company and two school districts as to who was entitled to certain tax money. It was not a simple exemption case where other remedies were available. Under the circumstances, mandamus was held to be a proper remedy in the case.

In *State, ex rel., v. Davis,* 144 Kan. 708, 62 P.2d 893 (1936), it was held that an order of the state tax commission that certain property be taken from the assessment roll as exempt could be reviewed in an action brought by the state on the relation of the county attorney. In that action, the State sought an injunction to enjoin the county treasurer and county clerk from complying with an order of the state tax commission granting an exemption. At that time, no direct appeal was provided to the district court from an order of the state tax commission. Since no other remedy was available, it was held that the State, as an aggrieved party, could maintain an action, using injunction, mandamus, or quo warranto as was best suited to the circumstances. The extraordinary remedy of injunction was available to the aggrieved party on the theory that no other adequate remedy was available.

The 1941 legislature enacted G.S. 1935, 79-2005 (1941 Supp.) which is the forerunner of what is now K.S.A. 1982 Supp. 79-2005. The new statute for the first time gave a taxpayer protesting the payment of taxes the right to bring an action, within thirty days after the filing of his tax protest, in a court of competent jurisdiction or, in the alternative, the right to file an application with the state commission of revenue and taxation (now the state board of tax appeals). 79-2005 thus provided an alternative judicial remedy to an aggrieved taxpayer after paying his taxes under protest. The thirty-day limitation for filing the action in the district court was strictly enforced by the courts. Failure of the taxpayer to commence an action in district court to recover taxes paid under protest within thirty days after filing his protest deprived the district court of jurisdiction. *Williams v.*

*Board of County Commissioners,* 192 Kan. 548, 389 P.2d 795 (1964).

The cases following the adoption of 79-2005 have consistently held that the remedies provided in that statute were cumulative, so that a taxpayer could pay his taxes under protest and either present his tax grievance to the administrative board provided for in the statute or file an action in district court within the time period allowed after protest. *Addington v. Board of County Commissioners,* 191 Kan. 528, 533, 382 P.2d 315 (1963); *Board of Park Commissioners v. Board of County Commissioners,* 206 Kan. 438, 480 P.2d 81 (1971).

Unfortunately, the various Kansas statutes pertaining to procedure in the area of taxation, including appeals, were not organized into a complete, rational scheme. K.S.A. 74-2426 permitted an appeal from the state board of tax appeals in most cases, but there were limitations on the right of a taxpayer to appeal to district court under that statute. In the case of *In re Lakeview Gardens, Inc.,* 227 Kan. 161, 605 P.2d 576 (1980), it was held that the tax grievance statutes, Article 17 of Chapter 79 of the Kansas Statutes Annotated, contained no provision for a right of appeal to the courts from orders of BOTA correcting or refusing to correct irregularities. The court held specifically that K.S.A. 1979 Supp. 74-2426, governing appeals from orders of BOTA was inapplicable to *original applications* for relief from tax grievances before BOTA under K.S.A. 79-1702. That case followed a prior decision, *City of Kansas City v. Jones & Laughlin Steel Corp.,* 187 Kan. 701, 704, 360 P.2d 29 (1961), which limited appeals to the courts under 74-2426 to such cases as are appealed from the directors of revenue· and property valuation as distinguished from original applications. It held that, there being no statutory provision for appellate review, relief could be found in such equitable remedies as quo warranto, mandamus, or injunction.

In the 1980 legislative session, the House Committee on Assessment and Taxation considered the confusion in the procedural aspects of the Kansas taxing laws. It introduced comprehensive legislation which sought to achieve a number of specific objectives: (1) The elimination of direct actions filed in the district court in tax grievance cases and the requirement in all tax protest cases of a hearing before the board of tax appeals,

with right of appeal to the district court; (2) a codification of the tax exemption procedure in Chapter 79, Article 2, with provision for judicial review of tax exemption matters under an omnibus appeals procedure statute, covering every type of order of the board of tax appeals. Such omnibus procedure statute was to include protests, exemptions, and equalization appeals along with appeals involving all taxing departments.

These basic objectives for tax procedural reform are clearly set forth in the minutes of the House Committee on Assessment and Taxation meeting held on March 3, 1980. Following hearings before the committee, the legislature enacted several bills which incorporated the proposed statutory changes and developed a legislative scheme involving procedure in all types of tax cases, including a method of appeal to the district courts in all cases where a taxpayer deems himself aggrieved by orders of BOTA. All of these bills were enacted and approved by the Governor in April 1980, and became effective either during that month or on July 1, 1980, after the effective date of all the new statutory provisions. The new statutory provisions made significant changes in the remedies provided to aggrieved taxpayers in all areas of ad valorem taxation, including cases where a taxpayer claimed an exemption from taxation.

The 1980 reforms in tax procedure are contained primarily in three statutes. The first is K.S.A. 1980 Supp. 79-2005 which was effective July 1, 1980. The former language in that section, which permitted an aggrieved taxpayer to pay his taxes under protest and then file an action within thirty days in a court of competent jurisdiction, was eliminated. His sole remedy is now to file an application for refund within the thirty-day period with BOTA. This statutory change achieved the legislative objective of eliminating direct action in the district court, thus channeling all tax matters through BOTA, the paramount taxing authority in the state. *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972).

The second important 1980 statutory change was in K.S.A. 74-2426, which provides in part:

"(*a*) Whenever the board of tax appeals shall enter its final order on any appeal or in any proceeding under the tax protest, tax grievance, tax exemption statutes or any original proceeding before the board other than the above cases said board shall make written findings of fact forming the basis of such determination and final order and such findings shall be made a part of such final order. The board

shall mail a copy of its final order to all parties to the proceeding within ten days following the certification of the order. The appellant or applicant and the county appraiser shall be served by restricted mail.

"(b)(1) No appeal shall be taken from a final order of the board unless the aggrieved party shall have first filed a motion for rehearing of that order with the board and the board shall have granted or denied the motion for rehearing, or thirty days shall have lapsed from the filing of that motion with the board, from which it shall be presumed that the board has denied the motion. Any order issued by the board following a rehearing shall become the final order of the board.

"(2) Within thirty days following the certification of any final order of the board, on such motion for rehearing, any aggrieved party in such appeal or proceeding may appeal to the district court of the proper county.

"(3) No appeal shall be taken from any order of the board in a no-fund warrant proceeding issued pursuant to K.S.A. 12-110a, 12-1662 *et seq.*, 19-2752, 75-4361, 79-2938, 79-2939, 79-2951 and statutes of a similar character.

"(4) This statute shall be exclusive in determining appeals taken from all decisions of the board of tax appeals after the effective date of this act and shall exclusively govern the procedure to be followed in taking any appeal from the board of tax appeals from and after such date."

This statutory change was effective April 16, 1980, and permits an appeal from any order of BOTA including original proceedings before BOTA. It achieved the legislative objective by providing for judicial review of all tax exemptions and the other mentioned tax matters under an omnibus tax appeals procedure.

The third statutory change was the enactment of a new statute, K.S.A. 1982 Supp. 79-213, effective July 1, 1980, which provides:

"(a) Any property owner requesting an exemption from the payment of ad valorem property taxes assessed, or to be assessed, against their property *shall be required to file an initial request for exemption, on forms approved by the board of tax appeals and provided by the county appraiser.*

"(b) The initial exemption request shall identify the subject property and state, in detail, the legal and factual basis for the exemption claimed.

"(c) The request for exemption shall be filed with the county appraiser of the county where the subject property is principally located.

"(d) After a review of the exemption request, and after a preliminary examination of the facts as alleged, the county appraiser shall recommend that the exemption request either be granted or denied, and, if necessary, that a hearing be held. If a denial is recommended, a statement of the controlling facts and law relied upon shall be included on the form.

"(e) The county appraiser, after making such written recommendation, shall then file the request for exemption and the recommendations of the county appraiser with the board of tax appeals.

"(f) Upon receipt of the request for exemption, the board shall docket the same and notify the applicant and the county appraiser of such fact.

"(g) After examination of the request for exemption, and the county appraiser's recommendation related thereto, the board may fix a time and place for hearing, and shall notify the applicant and the county appraiser of the time and place so fixed. In any case where a party to such request for exemption requests a hearing thereon, the same shall be granted. In all instances where the board sets a request for exemption for hearing, the county shall be represented by its county attorney or county counselor.

"(h) In the event of a hearing, the same shall be originally set not later than ninety (90) days after the filing of the request for exemption with the board.

"(i) When a determination is made as to the merits of the request for exemption, the board shall enter its order thereon and give notice of the same to the applicant, the county attorney and the county appraiser by sending to each a certified copy of its order.

"(j) The date of the order, for purposes of filing an appeal to the district court, shall be the date that a certified copy of the order is mailed to the party seeking to appeal.

"(k) During the pendency of a request for exemption, and in the event that taxes have been assessed against the subject property, no interest shall accrue on any unpaid tax for the year or years in question from the date the request is filed with the county appraiser until the expiration of thirty (30) days after the board issued its order thereon.

"(l) In the event the board grants the initial request for exemption, the same shall be effective for the period beginning with the date of first exempt use and ending on December 31 of the tax year in question. Thereafter, the tax exemption shall be renewed by the filing of an annual claim for exemption pursuant to K.S.A. 1982 Supp. 79-210 with the county appraiser of the county in which the subject property is principally located.

"(m) In conjunction with its authority to grant exemptions, the board shall have the authority to abate all unpaid taxes that have accrued from and since the date of first exempt use. In the event that taxes have been paid during the period where the subject property has been determined to be exempt, the board shall have the authority to order a refund of said taxes for a period not to exceed three (3) years." (Emphasis supplied.)

The language in K.S.A. 1978 Supp. 79-210 was also changed to require the owners of all exempt property to claim the exemption "in each year after approval thereof by the board of tax appeals." The obvious legislative intent in enacting these statutes was to provide an exclusive statutory remedy before BOTA in all cases involving a claim of tax exemption by any property owner, including political subdivisions of the state. These statutory changes achieve the legislative objective of codifying tax exemption procedures.

The well-recognized rule in this state is that where a full and adequate administrative remedy is provided in tax matters by statute, such remedy must ordinarily be exhausted before a

litigant may resort to the courts. *In re K-Mart Corp.,* 232 Kan. 387, 654 P.2d 470 (1982); *Wray v. State Dept. of Revenue,* 224 Kan. 234, 579 P.2d 717 (1978).

In this case, Tri-County, as the owner of real property claimed to be tax exempt under the Kansas law, has a full and adequate administrative remedy provided by statute for determination of its tax-exempt status. It made no attempt to avail itself of the administrative remedy; it had no right to resort to the courts in an independent action. It follows that the district court had no jurisdiction to determine this case and this court does not acquire jurisdiction over the subject matter upon appeal.

The judgment of the district court is reversed and the case is remanded to the district court with directions to dismiss the action.