No. 66,203

BERNARD A. ZARDA, SR., *et al., Appellants,* v. STATE OF KANSAS, *et al., Appellees.*

(826 P.2d 1365)

Opinion filed February 28, 1992.

*Raymond L. Dahlberg,* of Niewald, Waldeck & Brown, of Overland Park, argued the cause, and *Kenton C. Granger* and *Lisa A. Dunbar,* of the same firm, of Kansas City, Missouri, *John C. Frieden* and *Kevin M. Fowler,* of Frieden, Haynes & Forbes, of Topeka, and *James L. Ungerer,* of Overland Park, were with him on the briefs for appellants.

*William E. Waters*, of Kansas Department of Revenue, argued the cause and was on the brief for appellee Kansas Department of Revenue.

*LeeAnne Hays Gillaspie*, of Johnson County Legal Department, argued the cause and was on the brief for appellee Board of County Commissioners, Johnson County, Kansas.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiffs appeal from the order of the district court dismissing their action for mandamus, an accounting, declaratory and injunctive relief, recovery of taxes paid together with interest, and recovery of costs, including attorney fees, under 42 U.S.C. § 1983 (1988). The plaintiffs filed this action as a class action on behalf of taxpayers whose motor vehicle registration month was any month after February. The class was not certified, and plaintiffs' action was dismissed for lack of subject matter jurisdiction due to plaintiffs' failure to exhaust their administrative remedies. The primary defendants are the Kansas Department of Revenue and the Johnson County Board of Commissioners.

The single underlying issue is whether the alphabetical "staggered registration system" for motor vehicle registration and taxation, established by K.A.R. 92-51-21, unconstitutionally discriminated against persons whose registration month was any month after February. The sole issue in this appeal is whether the district court lacked subject matter jurisdiction on the ground that plaintiffs had failed to exhaust administrative remedies.

K.A.R. 92-51-21, which became effective May 1, 1982, established the staggered registration system for motor vehicles. This regulation was adopted as "[a]uthorized by and implementing K.S.A. 1981 Supp. 8-134, 8-134a." Under the system, persons whose last names begin with a letter toward the end of the alphabet paid more in motor vehicle taxes than identically situated taxpayers whose names begin with a letter close to the beginning of the alphabet. This inequality resulted from the differential availability of depreciation. A new method of computing depreciation eliminated the discrepancies as of January 1, 1991. K.A.R. 92-55-2a. 9 Kan. Reg. 1513 (1990). An original petition in quo warranto filed by the attorney general was voluntarily dismissed upon adoption of this curative regulation.

In October 1989, a memorandum was prepared in the Kansas Legislative Research Department in response to a request for an example of the "application of the motor vehicle tax for two hypothetical taxpayers in the same county who purchase the same new car at the same time, but have surnames at different extremes of the alphabet." On a 1989 model vehicle valued at $15,000 with taxes calculated on a constant mill levy, Mr. T would pay $236 more in taxes during a 5½-year period of ownership than Mr. A would pay. The same example was given in Attorney General Opinion No. 90-100, which concluded that the system violated constitutionally guaranteed equal protection.

K.S.A. 1991 Supp. 79-2005 and K.S.A. 1991 Supp. 74-2426 set out the administrative procedure for protesting the payment of taxes and for recovery of protested taxes. It is uncontroverted that plaintiffs did not follow the procedure. It also is uncontroverted that the time has expired in which named plaintiffs could have followed these procedures for protesting motor vehicle taxes collected before the method of computing depreciation was reformed.

The administrative procedure for a taxpayer's protesting the collection of allegedly unlawful taxes has as its first step, at the time of paying the taxes, the filing of a written statement with the county treasurer stating the grounds for protest. K.S.A. 1991 Supp. 79-2005(c) provides: "If the grounds of such protest shall be that any tax levy, or any part thereof, is illegal, such statement shall further state the exact portion of such tax which is being protested." The county appraiser must consider the taxpayer's grievance, and the taxpayer may appeal an unsatisfactory result to the State Board of Tax Appeals (BOTA).

K.S.A. 1991 Supp. 74-2426(c)(4) provides that any action of BOTA may be reviewed by the district court of the county in which the property is located. Review must be "in accordance with the act for judicial review and civil enforcement of agency actions," K.S.A. 77-601 et seq. K.S.A. 1991 Supp. 74-2426(c).

K.S.A. 77-612 provides, in pertinent part, as follows: "A person may file a petition for judicial review under this act only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." This court's statement of the rule is less rigid: "The well-recognized rule in this state is

that where a *full* and *adequate* administrative remedy is provided in tax matters by statute, such remedy must *ordinarily* be exhausted before a litigant may resort to the courts." (Emphasis added.) *State ex rel. Smith v. Miller*, 239 Kan. 187, Syl. ¶ 1, 718 P.2d 1298 (1986).

There is no claim by plaintiffs that they exhausted, or even initiated, the administrative remedies. They argue, however, that, since the administrative remedies available to them are not "full and adequate," it was not necessary for them to do so. Plaintiffs contend that the district court has not only original jurisdiction of their claims, but also jurisdiction under 42 U.S.C. § 1983.

In support of their contention, plaintiffs argue that the controlling issue is "purely judicial" and the purpose in requiring exhaustion of administrative remedies is not served by deferring the matter to BOTA. In this regard, this court has stated:

"The doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency." *Jenkins v. Newman Memorial County Hospital*, 212 Kan. 92, 95, 510 P.2d 132 (1973).

Under Kansas law, it would be unwarranted for a court to entertain a tax suit on any of these matters of administrative expertise where administrative remedies had not been pursued. Plaintiffs argue, however, that BOTA does not have authority to determine constitutional issues and, therefore, the issues involved in their action are not within the competence or expertise of BOTA. Plaintiffs contend that most of the cases relied upon by defendants for the proposition that exhaustion of administrative remedies is a condition precedent to filing suit in the district court involve challenges to administrative matters. For example, *Tri-County Public Airport Authority v. Board of Morris County Comm'rs*, 233 Kan. 960, 666 P.2d 698 (1983), was an action requesting an exemption from the payment of ad valorem property taxes assessed against property owned by the Airport Authority but rented to private citizens for various private uses. The plaintiff's claim that its property should enjoy tax-exempt status fell within the administrative agency's sphere of expertise, and the district court was without jurisdiction.

Another case cited by defendants is *State ex rel. Smith,* 239 Kan. 187. There, an action was brought seeking relief based upon a determination that various statutes were unconstitutional. The action was dismissed for plaintiff's failure to exhaust administrative remedies.

*In re Appeal of News Publishing Co.,* 12 Kan. App. 2d 328, 743 P.2d 559 (1987), had as its underlying issue the abatement of a sales tax assessment, but the constitutionality of the imposition on the publisher of the duty to collect the sales tax also was raised. BOTA declined to rule on the constitutionality question because "as a quasi-judicial agency, it had to assume the statutes were constitutional." 12 Kan. App. 2d at 334. The Court of Appeals remarked that "[s]ince administrative boards and agencies may not rule on constitutional questions, the issue of constitutionality must be raised when the case is on appeal before a court of law." 12 Kan. App. 2d at 334.

Defendants also cite two cases for the proposition that BOTA has authority to consider constitutional issues. The first is *Wray v. State Dept. of Revenue,* 224 Kan. 234, 579 P.2d 717 (1978).

Wray attempted to bypass BOTA and appeal an order of the director of taxation to the district court. This court's decision affirming the district court's dismissal is very short and *per curiam*. The taxpayer's issues are not revealed. It is stated: "Constitutional issues may properly be considered by the state board of tax appeals." The authority cited is *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 542 P.2d 278 (1975), in which BOTA's decision that a statute classifying cemetery land for tax purposes was constitutional was overturned. There was no issue of the pursuit of administrative remedies, nor any comment by this court as to BOTA's authority to make a determination as to the statute's constitutionality.

In neither *Wray* nor *Topeka Cemetery* is there any discussion of the relative areas of expertise of the administrative and judicial levels. In neither case is it possible to determine whether there were disputed matters which were within the expertise of the administrative agency and were decided before the cases reached the judicial forum on strictly constitutional questions.

Where there are no issues raised which lend themselves to administrative determination and the only issues present either

require judicial determination or are subject to judicial de novo review, it follows that plaintiffs should be permitted to seek court relief without first presenting the case to the administrative agency. Whether viewed as a deficiency or inadequacy in the administrative procedure as to the issue on which plaintiffs' case depends or as a matter of the administrative agency's simply not being designed or equipped to handle the issue, the conclusion is the same—there would be no purpose served by requiring plaintiffs to exhaust administrative procedures. See *Beaver v. Chaffee*, 2 Kan. App. 2d 364, 369, 579 P.2d 1217 (1978) (jail conditions). Here, plaintiffs argue that there are no issues requiring the expertise of BOTA. We do not agree.

Although we agree that this case turns on a single constitutional issue, it involves more than just a resolution of that constitutional question. Plaintiffs, in challenging the constitutionality of the regulation, are seeking injunctive, declaratory, and tax relief. It is obvious the purpose and ultimate goal of their challenge is to allow recovery of the motor vehicle taxes paid by them and others. Their challenge is to the regulations adopted by the Department of Revenue in implementing the statutes, which are clearly products of an administrative function.

In *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 327 P.2d 836 (1958), this court considered a class action brought by two named plaintiffs and 1,941 named taxpayers challenging the constitutionality of the motor carrier tax statute as well as the interpretation and administration of the Motor Carrier Act by the state commission of revenue and taxation. This was an original proceeding in mandamus, and the writ was allowed in part. The portion of the motor carrier tax statute which charged a tax on the valuation and assessment of certain franchise rights and privileges was found to be unconstitutional. In part, we held: "G.S. 1949, 79-1702 furnishes no remedy to the complaining taxpayers insofar as challenge of the constitutionality of the taxing act itself is concerned." 183 Kan. 287, Syl. ¶ 4.

In so ruling, this court made a distinction between a challenge to the commission's acts in implementing the statute and a challenge to the statute itself. One of the arguments raised by defendants was that "plaintiffs had an adequate remedy at law by

way of administrative proceedings under G.S. 1949, 79-1702."
183 Kan. at 293. This court said:

"Insofar as the plaintiffs complain of the commission's valuation of their property and other acts of the commission in its application of the statute, the commission's position is well taken. The commission should not be subjected to litigation in the courts until the alleged error has been called to its attention and it has had an opportunity to consider and correct the grievance. (*Gray v. Jenkins*, 183 Kan. 251, 326 P.2d 319.)

"However, a different situation exists where the tax statute under which the commission is operating is challenged as unconstitutional. G.S. 1949, 79-1702 was not intended to cover a situation where the constitutionality of a tax statute is challenged. The commission is not set up as a court to review the constitutionality of legislative enactments. It is an administrative body. It is the commission's duty to presume that the statutes are constitutional and valid. The plaintiffs had a right to seek court relief on the question of the constitutionality of the statute without first presenting the question to the commission for review." 183 Kan. at 293.

Clearly, based on *Felten* and *In re Appeal of News Publishing Co.*, BOTA is not vested with authority to determine the constitutionality of a statute. The statement in *Wray* to the contrary is disapproved. In the typical case in which administrative issues such as assessment were presented to the administrative agency along with a challenge to the constitutionality of a statute, the agency would presume the validity of the statute and apply its expertise to sorting out the assessment question. However, in the present case, plaintiffs are not challenging the constitutionality of the statute, but the regulations adopted by the Department of Revenue to implement K.S.A. 1981 Supp. 8-134 and -134a. Nonetheless, BOTA's authority is similarly limited in considering a constitutional challenge to a regulation. In *In re Residency Application of Bybee*, 236 Kan. 443, 691 P.2d 37 (1984), Wichita State University appealed the decision of the district court reversing the Faculty Residency Committee's decision denying Bybee residency status. In the appeal to this court, Bybee argued for the first time that the regulations determining residency were unconstitutional. This court, in refusing to consider the issue since it was not raised in the district court, stated: "Since administrative boards and agencies may not rule on constitutional questions, the issue of constitutionality must be raised when the case is on appeal before a court of law." 236 Kan. 443, Syl. ¶ 4.

In the present case, the plaintiffs could have sought a declaratory judgment as to the constitutionality of the regulations and injunctive relief in the district court without first presenting these two issues to BOTA. The district court did have jurisdiction to hear plaintiffs' prayer for a declaratory judgment as to the constitutionality of the staggered registration and taxation system and for a permanent injunction against further utilization of that system.

However, plaintiffs also prayed for recovery of the taxes collected and paid pursuant to the implementation of K.A.R. 92-51-21. Clearly, plaintiffs are seeking tax relief by challenging the regulation adopted by the Department of Revenue in its application of the statute. In *Tri-County*, this court, in noting that K.S.A. 1980 Supp. 79-2005 was part of the 1980 reforms in the tax procedure, said:

"The 1980 reforms in tax procedure are contained primarily in three statutes. The first is K.S.A. 1980 Supp. 79-2005 which was effective July 1, 1980. The former language in that section, which permitted an aggrieved taxpayer to pay his taxes under protest and then file an action within thirty days in a court of competent jurisdiction, was eliminated. *His sole remedy is now to file an application for refund within the thirty-day period with BOTA. This statutory change achieved the legislative objective of eliminating direct action in the district court, thus channeling all tax matters through BOTA, the paramount taxing authority in the state. Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972)." (Emphasis added.) 233 Kan. at 964.

Although in *Felten*, 183 Kan. 287, this court proceeded to determine the constitutionality of the statute, it limited the relief granted by concluding that only those named taxpayers who protested the payment of their taxes were entitled to recover the tax they paid by virtue of this portion of the statute being held unconstitutional. Here, since the plaintiffs did not comply with 79-2005, they cannot seek recovery of their taxes directly in the district court. In *Felten*, we recognized that the acts of an agency in its application of the statute are administrative in nature, and, as such, administrative remedies must first be exhausted. We further recognized that an agency should not be subjected to court action until it has had an opportunity to consider and correct the alleged error. Here, the Department of Revenue eventually

did that when the error was brought to its attention by the filing of the quo warranto action by the attorney general.

In *State ex rel. Smith*, 239 Kan. 187, as in the present case, the plaintiff argued that it had no adequate administrative remedy because BOTA had no authority to rule upon the constitutionality of the tax statutes or provide the relief sought by way of mandamus and quo warranto. This court did not agree. In affirming the district court's dismissal, this court observed:

"A party aggrieved by an administrative ruling is not free to pick and choose a procedure in an action in the district court in order to avoid the necessity of pursuing his remedy through administrative channels. Since the adoption of the act for judicial review and civil enforcement of agency actions (K.S.A. 77-601 *et seq.*), it would appear that relief such as sought here should be raised as new issues in the district court on appeal from the BOTA. See K.S.A. 77-617.

"Although appellant asserts the unconstitutionality of the statutes and seeks extraordinary relief, its obvious complaint is that the assessed valuation of its real property is too high. *This* is an issue that must be determined by exhaustion of administrative remedies before resorting to the courts." (Emphasis added.) 239 Kan. at 190.

Plaintiffs further argue that the exhaustion of state admininstrative remedies is not required before an action under 42 U.S.C. § 1983 is filed in state courts. Plaintiffs rely on the recent United States Supreme Court decisions in *Felder v. Casey*, 487 U.S. 131, 101 L. Ed. 2d 123, 108 S. Ct. 2302 (1988), and *Patsy v. Florida Board of Regents*, 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982). In *Felder*, the Court considered whether a § 1983 action was barred for failing to comply with the Wisconsin notice-of-claim statute. *Patsy* was an employment discrimination case. Neither case involved a challenge to state taxing procedure; therefore, they have limited application in the present case.

Defendants respond that *Fair Assessment in Real Estate Assn. v. McNary*, 454 U.S. 100, 70 L. Ed. 2d 271, 102 S. Ct. 177 (1981), establishes a different rule for state tax cases. *McNary* involved the extension of the prohibition of the Tax Injunction Act to a federal court action seeking damages under § 1983 for a state tax problem. The Court held that principles of comity precluded a federal court from hearing taxpayers' damages actions to redress unconstitutional administration of a state tax system. The Court said: "Such taxpayers must seek protection of their

federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court." 454 U.S. at 116. Justice Brennan, joined by Justices Marshall, Stevens, and O'Connor, concurred based upon the failure of petitioners to exhaust administrative remedies in each tax year for which they sought damages, and not based upon the principles of comity. Justice Brennan's concurring opinion quotes from an earlier opinion setting out the considerations which have led to restraint:

" 'The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency.' " 454 U.S. at 137 n.27 (Brennan, J., concurring) (quoting *Perez v. Ledesma*, 401 U.S. 82, 128 n.17, 27 L. Ed. 2d 701, 91 S. Ct. 674 [1971] [Brennan, J., concurring and dissenting]).

His concern leads to the conclusion that "[w]here administrative remedies are a precondition to suit for monetary relief in state court, absent some substantial consideration compelling a contrary result in a particular case, those remedies should be deemed a precondition to suit in federal court as well." 454 U.S. at 137. We conclude that those same concerns logically apply when a federal cause of action (§ 1983) is brought in state court to challenge state taxation.

In the recent case of *McKesson Corp. v. Florida Alcohol & Tobacco Div.*, 496 U.S. 18, 110 L. Ed. 2d 17, 110 S. Ct. 2238 (1990), the United States Supreme Court indicated that state postdeprivation tax appeal procedures are constitutional when they provide a "clear and certain remedy." The Court said:

"When a State penalizes taxpayers for failure to remit their taxes in timely fashion, thus requiring them to pay first before obtaining review of the tax's validity, federal due process principles long recognized by our cases require the State's postdeprivation procedure to provide a 'clear and certain remedy'

[citation omitted] for the deprivation of tax moneys in an unconstitutional manner." 496 U.S. at 51.

The plaintiffs have failed to demonstrate how the remedies provided by K.S.A. 1991 Supp. 79-2005 and K.S.A. 1991 Supp. 74-2426 are unclear, uncertain, incomplete, or inadequate. The plaintiffs could have complied with K.S.A. 1991 Supp. 79-2005 and still have pursued their constitutional claims. Although constitutional claims cannot be acted upon by BOTA, such claims would be resolved by the district court on appeal.

Plaintiffs' prayer for recovery of monies paid under the staggered registration and taxation system established by K.A.R. 92-51-21 is an attempt to seek tax relief without first exhausting their administrative remedies available under 79-2005 and 74-2426. We conclude that K.S.A. 1991 Supp. 79-2005 and K.S.A. 1991 Supp. 74-2426 provide plaintiffs with a clear and certain remedy for full, adequate, and complete relief. Thus, the district court did not have jurisdiction to grant such relief, and properly dismissed that part of plaintiffs' action.

Although the district court's order of dismissal for lack of jurisdiction was too sweeping in that it included plaintiffs' prayer for declaratory and injunctive relief, there was nothing to enjoin since the plaintiffs' complaints do not extend to any taxation which occurred after December 31, 1990, and plaintiffs' failure to comply with 79-2005 precluded their recovery of any taxes paid. Therefore, those actions are moot as to the plaintiffs and should have been dismissed for that reason and not for lack of jurisdiction. A correct ruling will not be reversed because the district court relied upon an incorrect ground or assigned an erroneous reason for its ruling. *State v. Wilburn*, 249 Kan. 678, Syl. ¶ 5, 822 P.2d 609 (1991).

The judgment of the district court is affirmed.